A93A1323. MORRIS & MANNING INSURANCE AGENCY, INC. et al. v. MORRIS.
(439 SE2d 660)

BEASLEY, Presiding Judge.

Morris sued Morris & Manning Insurance Agency, Inc., its corporate officers Manning and Nozick individually, and their wives in a multi-count complaint alleging breach of a stock redemption agreement and consulting agreement, default on a promissory note by the corporation, and default on personal guarantees of the corporate obligation executed by the individual defendants. Plaintiff also sought punitive damages for fraud by the corporation and its officers, attorney fees and expenses of litigation under OCGA § 13-6-11, and injunctive relief to prevent depletion of corporate assets. Defendants counterclaimed for fraud and breach of fiduciary duty, seeking damages for unlawful corporate distribution, cancellation of the transactions, and expenses of litigation under OCGA § 13-6-11.

Partial summary judgment was awarded to plaintiff against the four individual defendants on the personal guarantees and against the corporation under the consulting agreement. The order was certified as final under OCGA § 9-11-54 (b), and judgment was entered accordingly. Error is enumerated only with respect to the grant of summary judgment on the personal guarantees.

Plaintiff Morris entered the insurance agency business in 1949; defendant Manning joined his company as a salesperson in 1965, and became a shareholder in 1970. In 1977, the two formed Morris & Manning Insurance Agency, with Morris owning 60 percent of the stock and Manning 40 percent. Defendant Nozick became a shareholder in 1985. Morris was the agency's president, treasurer and director; Manning was its vice president, secretary and director; and Nozick was a director.

In 1988, Manning expressed dissatisfaction to Morris concerning his lack of productivity. In early 1989, it was agreed that Morris' salary would be reduced. During the summer of 1989, Manning decided that he would either buy out Morris' interests or leave the agency. He presented a buy-out proposal to Morris and discussions toward this end ensued.

Morris testified on deposition that he engaged attorney Robert Paller as his advisor. Paller had incorporated the agency in 1977 and had served on its board of directors until 1980, when he was replaced

by Morris' son. His firm continued thereafter to provide legal representation for the agency on an ad hoc basis. It was Manning's understanding that Paller represented all "the participants in the transaction" in these discussions, but Paller stated on deposition that he and his firm represented only Morris in this matter. Initially the agreement was to be structured as a direct purchase of Morris' stock by Manning, but Manning withdrew an offer of this type after being cautioned against it by independent financial advisors. It was subsequently decided that the transaction was to take the form of a redemption of Morris' stock by the agency. According to Paller, this was done on the recommendation of Manning's advisor.

Paller met with Morris and Manning on July 20, 1989. According to Paller, Manning was "insistent" at that meeting that the transaction had to be structured as a stock redemption. Paller explained to *both* Morris and Manning: "[I]f you do that you've got to be sure that you don't render the corporation insolvent," because if the corporation's purchase of its own stock renders the corporation insolvent, the entire corporate obligation could be void. Paller stated that if the transaction was to be in the form of a stock redemption, then personal guarantees would be required to protect Morris. Manning denies any knowledge of the insolvency issue until after the transaction was closed.

Morris and Manning alone negotiated and agreed on a purchase price for Morris' interest. Manning agreed that both he and his wife would personally guaranty the obligation. Paller thereafter informed the agency's accountant about the potential problems with a stock redemption and that he should look into the insolvency question. Thereafter, the transaction was handled by Paller's law partner, Meyer.

In an August 2 letter to Morris, attorney Meyer expressed concerns about the insolvency issue as follows: "[U]nder the new Georgia Business Corporation Code, the [stock] redemption will be a valid act of the corporation only if an equitable insolvency test (ability to pay debts as they become due) and a balance sheet insolvency test (net assets in excess of all senior claims upon dissolution) are met. This fact, coupled with the payout from the company under the note and the pledge of your stock, indicates that your primary risk is the ability of Mr. Manning to continue to operate the corporation profitably, notwithstanding the personal guaranties." The parties are in disagreement as to whether Manning and Nozick and their wives saw the August 2 letter prior to the closing.

The transaction was closed on September 1, 1989. The documents provided that the agency would redeem Morris' stock for $750,000 with $75,000 payable at closing and the balance in non-interest bearing monthly installments of $6,250 over nine years. As a re-

sult, Manning and Nozick became the sole shareholders, respectively owning 75 percent and 25 percent. The three directors unanimously consented to and ratified the stock redemption transaction. The agency made monthly payments totalling $112,500, until March 1991 when payments ceased. Since that time Manning and Nozick have continued to draw salaries and benefits from the corporation jointly in excess of $200,000 annually, and the agency has continued to pay its other debts timely.

The question is whether the record requires judgment in favor of Morris on the personal guarantees.

" '(O)n motion for summary judgment the burden was upon the plaintiff, as movant, to conclusively establish the absence or nonexistence of any defense. . . .' [Cit.]" *Scott v. Aetna Finance Co.*, 201 Ga. App. 81, 82 (410 SE2d 203) (1991). If the moving party discharges its burden, "the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue. OCGA § 9-11-56 (e)." *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

1. Defendants contend that a factual question remains as to whether the stock redemption transaction rendered the company insolvent. If so, they contend that the entire transaction is void under OCGA § 14-2-640, including the guaranty.

OCGA § 14-2-640 (a) provides: "A board of directors may authorize and the corporation may make distributions to its shareholders subject to restriction by the articles of incorporation and the limitation in subsection (c) of this Code section." Subsection (c) requires: "No distribution may be made if, after giving it effect: (1) The corporation would not be able to pay its debts as they become due in the usual course of business; or (2) The corporation's total assets would be less than the sum of its total liabilities. . . ." Under subsection (d), "The board of directors may base a determination that a distribution is not prohibited under subsection (c) . . . either on financial statements prepared on the basis of accounting practices and principles that are reasonable in the circumstances or on a fair valuation or other method that is reasonable in the circumstances."

Plaintiff contends that the stock redemption transaction passed the tests of subsections (c) and (d) as a matter of law, but that even if it did not, the guaranty is enforceable under *Hullender v. Acts II*, 153 Ga. App. 119 (264 SE2d 486) (1980).

Although *Hullender* arose in the context of a divorce proceeding, it is otherwise factually alike, and the controlling facts are identical. Mr. and Mrs. Hullender were the sole shareholders of a closely held corporation. As part of their divorce settlement, the corporation agreed to purchase all the common stock held by Mrs. Hullender, which she transferred to the corporation in exchange for a debenture

note and guaranty from Mr. Hullender. When the corporation defaulted on the obligation, she sued to collect on the note and guaranty. Mr. Hullender asserted that the purchase agreement was void ab initio under a predecessor to OCGA § 14-2-640,[1] which similarly prohibited a corporation from purchasing its shares at a time when the corporation is insolvent or the purchase would make it insolvent. Since it was conceded that the corporation was insolvent at the time the note issued (a concession not present here), we concluded that it was prohibited by law and the corporate obligation could not be enforced. However, in Division 2 we applied the reasoning that " '[i]t would be false logic to hold that (Mr. Hullender) could avoid liability under the contract for the reason that the making of it (was) . . . an illegal act to the detriment of third persons. If there is a wrong or if any harm has been committed, let those who have been injured complain, and not those who have made the wrong a possibility.' [Cits.]" Id. at 121. We held that Mr. Hullender "is not entitled to invoke the illegality of the obligation underlying the debenture note and thereby avoid liability as a personal guarantor." Id. at 122.

The analysis of *Hullender* is clearly applicable here. The undisputed evidence shows that on the recommendation of financial counsel Mr. Manning insisted on structuring the transaction as a purchase of stock by the corporation and that he personally guaranteed the obligation. He was knowledgeable about such guarantees: "I am not exactly a neophyte to giving a personal guaranty. Over the years when we go to the bank to borrow money corporately, the banker always has us sign personally. And I understood the significance and the reason behind that." The individual defendants "unconditionally" guaranteed the "full and prompt payment when due" of "all amounts owing under [the] promissory note." Defendants admit execution of the note and guaranty and default by the corporation. They participated in the transaction and benefited from it.

Plaintiff established a prima facie case under the note; the burden then shifted to defendants to interpose a viable defense. OCGA § 11-3-307. *Hullender* precludes their defense that the guaranty is void under OCGA § 14-2-640. Contrary to defendants' assertion, it is a sound, well-reasoned decision which does not warrant overruling.

2. Defendants' fraud defense is also without merit. First, the allegations of fraud were not the subject of the summary judgment motion nor ruled on by the trial court. Second, although the evidence is in dispute as to whether Manning was aware of the insolvency concerns, at the very least by the exercise of due diligence he should have

---

[1] OCGA § 14-2-640 of the 1988 Georgia Business Corporation Code replaced former Code § 14-2-92 (e), which in turn replaced the provision under consideration in *Hullender*, Ga. Code § 22-513 (e).

known.

3. As to defendants' public policy argument, the policy considerations militate in favor of plaintiff. See *Hullender*, supra.

*Judgment affirmed. Cooper and Smith, JJ., concur.*

DECIDED NOVEMBER 12, 1993 —
RECONSIDERATION DENIED DECEMBER 16, 1993 —

*Doffermyre, Shields, Canfield & Knowles, Everette L. Doffermyre, Jr.*, for appellants.

*Rogers & Hardin, C. B. Rogers, Daniel McGinnis*, for appellee.